**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| NEAL K. FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:16cv0905 |
| | ) | |
| SPRINT CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SPRINT CORPORATION'S AND MARIANO ALMONTE'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS II AND III OF
THE AMENDED COMPLAINT**

Sprint Corporation ("Sprint") and Mariano Almonte ("Almonte") (collectively, the "Defendants"), by counsel, respectfully file this memorandum in support of their Motion to Dismiss Counts II and III Pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I. SUMMARY OF RELEVANT FACTUAL ALLEGATIONS**

On October 7, 2016, Neal K. Fields ("Plaintiff") filed an eight-count Complaint in the Circuit Court of the City of Richmond ("Compl."), styled *Fields v. Sprint Corporation, et al.*, No. CL16004551-00.  *See* (Doc. No. 1, Ex. A).  On November 9, 2016, Defendants filed a Notice of Removal (Doc. No. 1) pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.  Defendants filed a motion to dismiss on November 16, 2016.  (ECF No. 3.)  On November 30, 2016, Plaintiff filed an Amended Complaint (the "Complaint") (ECF No. 5), reducing his claims from eight counts to three.[1]  Prior to these filings, this Court adjudicated a nearly identical legal dispute between these parties on September 9, 2016.  *See Fields v. Sprint Corporation, et al.*, 2016 WL 4726549, No.

---

[1] On December 8, this Court entered an Order (ECF No. 6) denying as moot Defendants' motion to dismiss the initial Complaint.

3:15cv618 (E.D. Va.).  Aside from Plaintiff's abandoned claims against a Chesterfield County police officer, the material facts and allegations previously before this Court have not changed. [2]

On December 23, 2014, at approximately 10:15 a.m., Plaintiff visited a Sprint store located in Chesterfield, Virginia, where he purchased an "iPhone 5C Blue 8GB Kit" and wireless service plan for his son, with the assistance of Almonte, a Sprint employee.  (Am. Compl. ¶¶ 9-12.) According to Plaintiff, after Almonte encouraged him to purchase a cover for the iPhone, which he decided not to do, Plaintiff browsed the store while Almonte activated the iPhone.  (*Id.* ¶¶ 13–17.)  When Plaintiff bent down to view a product, a box cutter fell out of his pocket.  (*Id.* ¶ 18.) After returning to the activated iPhone, Plaintiff alleges that Almonte stated, "I seen that box cutter," at which point Plaintiff explained that he used it for work and volunteered to let Almonte search his person if he was suspected of theft.  (*Id.* ¶¶ 19-20.)  Plaintiff left the store without being searched and alleges that "[w]hen [he] left the Sprint store no alarms were activated and Mr. Almonte allowed Mr. Fields to leave the store without any questioning."  (*Id.* ¶¶ 21–23.)

---

[2] This prior case began with the filing of a fourteen-count Complaint in the U.S. District Court for the Eastern District of Virginia on October 15, 2015, against Sprint Corporation ("Sprint"), Mariano Almonte ("Almonte"), and Kevin Gruarin ("Officer Gruarin").  On December 14, 2015, Plaintiff filed his First Amended Complaint, which included the following counts: (1) malicious prosecution against Sprint and Almonte; (2) negligence against Sprint; (3) negligence against Sprint and Almonte; (4) gross negligence against Sprint; (5) gross negligence against Almonte; (6) false arrest against Sprint and Almonte; (7) intentional infliction of emotional distress against Sprint and Almonte; (8) slander and slander *per se* against Sprint and Almonte; (9) malicious prosecution [state law] against Officer Gruarin; (10) malicious prosecution under 42 U.S.C. § 1983 against Officer Gruarin; (11) false arrest against Officer Gruarin; (12) 42 U.S.C. § 1983 claim against Officer Gruarin; (13) 42 U.S.C. § 1983 claim against Sprint and Almonte; (14) punitive damages against Sprint and Almonte; (15) punitive damages against Gruarin.  Following Plaintiff's voluntary dismissal of the causes of action based upon federal law, this Court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed the case without prejudice.  *See Fields v. Sprint Corp., et al.*, No. 3:15cv618, 2016 WL 4726549 (E.D. Va. Sept. 9, 2016).

Thereafter, "Mr. Almonte contacted law enforcement officers accusing Mr. Fields of stealing a phone case." (*Id.* ¶ 24.)[3]

According to Plaintiff, "Mr. Almonte knew that these accusations were untrue at the time he made them."[4] (*Id.* ¶ 26.) Furthermore, the Defendants did not see him steal the case, did not find anything that indicated a box cutter was used to steal the case, and there was no video recording that existed showing Plaintiff stealing the case. (*Id.* ¶¶ 28–30.) Plaintiff alleges that later that same day, Mr. Almonte told Officer Gruarin during an interview that "I witnessed Mr. Fields use the box cutter to steal an iPhone case." (*Id.* ¶ 35.) After the interview with Mr. Almonte, Officer Gruarin "sought to obtain an arrest warrant for Mr. Fields at the General District Court of Chesterfield County" and arrested Plaintiff for petit larceny and felony possession of a burglarious tool. (*Id.* ¶¶ 36–39.) According to the Amended Complaint, "Officer Gruarin arrived at the Food Lion store where Mr. Fields was working . . . put Mr. Fields in handcuffs and arrested him in his workplace, humiliating Mr. Fields in front of his colleagues and friends." (*Id.* ¶¶ 38, 40.) When asked why the arrest was taking place, "Officer Gruarin told [Plaintiff] that Mr. Almonte and a customer at Sprint had seen him with the box cutter, and accused him of stealing the phone case." (*Id.* ¶ 41.) Following his release on personal recognizance, Plaintiff returned to Food Lion to

---

[3] Descriptions of the reports made to law enforcement are identical to those in the previous case. *Compare* (Compl. ¶ 24) *with Fields v. Sprint Corp., et al.*, No. 3:15cv0618 (E.D. Va.), ECF No. 11 ("At or around noon of December 23, 2014, Mr. Almonte and/or other employees of Sprint contacted law enforcement officers accusing Mr. Fields of stealing a phone case. This claim was purportedly based upon an inventory check of phone cases coming up short and Mr. Fields' possession of a box cutter.").

[4] Notably, the Amended Complaint is the fourth version of the complaint in this matter (a Complaint and Amended Complaint in the initial case, 3:15cv618, a Complaint in this current case, and now this Amended Complaint), yet this is the first time that this specific—and significant—allegation appears in Plaintiff's complaint.

explain the circumstances of his arrest and learned that he was being suspended without pay.  (*Id.* ¶¶ 42–43.)

Plaintiff alleges that his criminal trial was scheduled to proceed on January 8, 2015, but was rescheduled on two occasions after "Mr. Almonte and other witnesses from Sprint failed to appear." (*Id.* ¶¶ 43–44.)  Plaintiff alleges that upon information and belief, Mr. Almonte and other Sprint witnesses did not appear for trial "because they knew the accusations leveled against Mr. Fields were patently false." (*Id.* ¶ 45.)  On July 6, 2015, Assistant Commonwealth Attorney Laura Khawaja moved to *nolle prosequi* the charges against Plaintiff.  (*Id.* ¶ 48.)  Despite this resolution, the Amended Complaint alleges a variety of effects upon Mr. Fields.  Specifically, Plaintiff's suspension from employment resulted in lost income and compromised a workers compensation claim against Food Lion during that time.  (*Id.* ¶¶ 50–51.)  Plaintiff alleges that as a result of this suspension, he defaulted on his mortgage, was unable to retain health insurance, began to suffer from depression and anxiety, and was unable to retain alternative employment based on his background check. The Amended Complaint is otherwise silent with respect to Plaintiff's current employment status.

Based upon a review of public records, for which this Court can take judicial notice, it appears that all records of Plaintiff's criminal case—with the exception, now, of this lawsuit—have been expunged.  *See, e.g.*, *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (determining that "a pertinent document" may be considered outside the complaint without converting a motion to dismiss into one for summary judgment and that "[t]his ruling encompasses not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims").

Plaintiff claims five-hundred thousand dollars in compensatory damages and five-hundred thousand dollars in punitive damages—a total of one million dollars in damages as a result of this alleged incident.  (*Id.* ¶ 87.)

## II. STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the Court should accept as true all well-pleaded factual allegations, viewing the complaint in the light most favorable to the plaintiff. *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991).  In assessing the factual allegations, "the Court may consider the facts alleged on the face of the complaint, as well as 'documents incorporated into the complaint by reference.'"  *Mabutol v. Fed. Home Loan Mortg. Corp.*, No. 2:12CV406, 2013 U.S. Dist. LEXIS 42685, at *6 (E.D. Va. Mar. 25, 2013) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Ultimately, to survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Lastly, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

### III. ARGUMENT

**A.  Count II – Intentional Infliction of Emotional Distress: Plaintiff's allegations do not rise to the level of "outrageous or intolerable" conduct.**

In Count II, Plaintiff alleges the tort of intentional infliction of emotional distress against the Defendants for intentionally accusing Plaintiff of "serious criminal conduct without any reasonable cause to do so."  (Am. Compl. ¶ 70).  Under Virginia law, to state a claim for intentional infliction of emotional distress, Plaintiff must allege: (1) intentional or reckless conduct; (2) conduct that is outrageous and intolerable, offending generally accepted standards of decency and morality; (3) a causal connection linking the conduct and the emotional distress; and (4) severe emotional distress.  *See Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008); *see also Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)).

As an initial matter, "actions for intentional infliction of emotional distress are not favored in Virginia."  *Michael v. Sentara Health System*, 939 F. Supp. 1220, 1233 (E.D. Va. 1996).  "Absent accompanying physical injury, Virginia Courts very much look down on this tort in general."  *Karpel v. Inova Health Sys. Servs., Inc.*, No. Civ. A 96-347-A 1997 U.S. Dist. LEXIS 24491, at *19 (E.D. Va. Jan. 27, 1997) (citing *Ruth v. Fletcher*, 377 S.E.2d 412 (Va. 1989)).  In this instance, Plaintiff has not alleged any physical injury.

In *Russo v. White*, the Supreme Court of Virginia addressed the outrageousness requirement of an intentional infliction of emotional distress claim and held, "[i]t is insufficient for a defendant to have acted with an intent which is tortious or even criminal."  400 S.E.2d 160, 162 (Va. 1991).  Virginia courts have found liability for intentional infliction of emotional distress "'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Fuller v. Aliff*, 990 F. Supp. 2d 576, 580 (E.D. Va. 2013) (quoting *Russo*,

400 S.E.2d at 162).   Even construed in the light most favorable to Plaintiff, the Amended Complaint's allegations do not approach the level of outrageousness required by Virginia law.

Specifically, Plaintiff claims that "intentionally accus[ing] Mr. Fields of serious criminal conduct without any reasonable cause to do so," (Am. Compl. ¶ 70) and "[l]ying to a police officer in order to procure an arrest of an innocent person and then needlessly prolonging the ensuing criminal proceedings is outrageous and intolerable; such conduct offends generally accepted standards of decency and morality." (*Id*. at ¶ 72.)   These allegations form the basis of Plaintiff's claim that Defendants have engaged in "conduct that goes 'beyond all possible bounds of decency' and is 'utterly intolerable in a civilized community,' as required by Virginia law." *Ainsworth v. Loudoun County School Bd.*, 851 F. Supp. 2d 963, 982 (E.D. Va. 2012) (quoting *Russo*, 400 S.E.2d at 162).   In reality, courts have found that similar allegations were insufficient to sustain a cause of action for intentional infliction of emotional distress.   *See, e.g.*, *Crittendon v. Arai Americas, Inc.*, No. 2:13cv567, 2014 WL 31490, at *7 (E.D. Va. Jan. 3, 2014) (finding allegations that defendants filed false reports concerning plaintiff and informed others that plaintiff had stolen money and committed financial improprieties at work did not constitute extreme and outrageous conduct in the context of a claim for intentional infliction of emotional distress); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 266 (W.D. Va. 2001) (holding that defendant's allegedly false statements that plaintiff was terminated for theft were "completely insufficient to demonstrate the level of outrageousness required under Virginia law" for an intentional infliction of emotional distress claim); *Karpel v. Inova Health Sys. Servs., Inc.*, No. Civ. A 96-347-A 1997 U.S. Dist. LEXIS 24491, at *20-21 (E.D. Va. Jan. 27, 1997) (causing Plaintiff's firing was not outrageous).

Similarly, the Amended Complaint's references to "various embarrassing and burdensome inquiries into this matter" (Am. Compl. ¶ 52) and "depression and anxiety" (*Id*. at ¶ 56) fail to

7

establish the requisite level of severity under Virginia law.  *See, e.g.*, *Russo*, 400 S.E.2d at 163

(citing *Ely v. Whitlock*, 385 S.E.2d 893, 897 (Va. 1989)).   With respect to the Amended

Complaint's more generalized allegations, this Court has previously refrained from "tak[ing]

Plaintiff's legal conclusions . . . at face value and determines the sufficiency of the pleading and

the underlying actions' outrageousness for itself."  *Crittendon*, 2014 WL 31490, at *7.  Moreover,

courts have dismissed intentional infliction of emotional distress claims involving far more

outrageous conduct than Plaintiff has alleged here.  *See, e.g.*, *Carter v. Khan*, No. 1:15cv572,

22015 WL 6738607 (E.D. Va. Nov. 4, 2015) (dismissing a claim for intentional infliction of

emotional distress based upon Plaintiff's allegations of being tasered during a traffic stop).

Because the Amended Complaint's factual allegations cannot establish that Defendants'

actions were "so outrageous in character and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community," *Russo*, 400 S.E.2d at 163, Count II must be dismissed.

### B. Count III – Slander and Slander *Per Se*: Plaintiff's allegations are not actionable as they are privileged communications with law enforcement regarding potential criminal activity.

Count III alleges that Defendants are liable for slander and slander *per se* for falsely

accusing Plaintiff of a crime and publishing these false accusations to third parties, including law

enforcement officers. (Am. Compl. ¶¶ 80–81.)  In Virginia, "[t]here is no distinction . . . between

an action for libel and one for slander.  Both fall under the common umbrella of defamation, the

elements of which are: (1) a publication of (2) an actionable statement with (3) the requisite intent."

*Frizzell v. Media Gen. Operations, Inc.*, 71 Va. Cir. 163, 165 (Va. Cir. Ct. 2006); *see also Jordan

v. Kollman*, 612 S.E2d 203 (Va. 2005)).   "Slander *per se* is a published defamatory statement

where words are falsely spoken of a person which impute to the party the commission of some

8

criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished." *Smith v. Button*, 43 Va. Cir. 379, 381 (Va. Cir. Ct. 1997). Under either claim, "[w]hether a statement is actionable is a matter of law to be determined by the court." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993) (citing *Chaves v. Johnson*, 335 S.E.2d 97 (Va. 1985)).

Plaintiff's slander and slander per se allegations are not actionable because the alleged statement is absolutely privileged.

Under Virginia law, it is well established that "words spoken or written in a judicial proceeding that are that relevant and pertinent to the matter under inquiry are absolutely privileged." *Darnell v. Davis*, 58 S.E.2d 68, 70 (Va. 1950). The scope of "judicial proceeding" within this context has been expanded by the Supreme Court of Virginia to permit "the application of the absolute privilege well beyond the actual courtroom." *Lindeman v. Lesnick*, 604 S.E.2d 55, 58 (Va. 2004). Indeed, this Court and the Fourth Circuit have held as such, in extending the absolute privilege in the defamation context to communications with law enforcement and even civil enforcement agencies. *See, e.g.*, *Shabazz v. PYA Monarch, LLC*, 271 F. Supp. 2d 797 (E.D. Va. 2003) (finding that the defendant's communications with the FBI accusing the plaintiff of expressing terrorist ideations were absolutely privileged); *Holmes v. Eddy*, 341 F.2d 477 (4th Cir. 1965) (holding that information given to the SEC by a private party for the purpose of initiating a prosecution was absolutely privileged). Plaintiff alleges he was defamed by the Defendants' communication and publication of criminal accusations to law enforcement. (Am. Compl. ¶¶ 79–81.) As these cases demonstrate, this alleged communication and publication fits squarely within the absolute privilege concerning communications with law enforcement regarding potential criminal activity. *Shabazz*, 271 F. Supp. 2d at 805–06; *Holmes*, 341 F.2d at 480. Accordingly,

Count III must be dismissed as the alleged defamation is absolutely privileged and therefore not actionable.

## IV. CONCLUSION

For these reasons, Counts II and III of Plaintiff's Amended Complaint fail to state a claim upon which relief can be granted and should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Dated: December 22, 2016

Respectfully submitted,

*/s/ Brian E. Pumphrey*
Brian E. Pumphrey (VSB. No. 47312)
Steven G. Popps (VSB No. 80817)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Tele: (804) 775-7745
Fax: (804) 698-2018
bpumphrey@mcguirewoods.com
spopps@mcguirewoods.com

*Counsel for Defendants Sprint Corporation and Mariano Almonte*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 22nd day of December, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing (NEF) to all counsel of record.

*/s/ Brian E. Pumphrey*
Brian E. Pumphrey (VSB. No. 47312)
Steven G. Popps (VSB No. 80817)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Tele: (804) 775-7745
Fax: (804) 698-2018
bpumphrey@mcguirewoods.com
spopps@mcguirewoods.com

*Counsel for Defendants Sprint Corporation and Mariano Almonte*
