IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| NEAL K. FIELDS,<br>        Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:16cv905 (MHL) |
| | ) | |
| SPRINT CORPORATION &<br>MARIANO ALMONTE,<br>        Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Neal K. Fields ("Fields") brings this tort action against Defendants Sprint
Corporation ("Sprint") and its employee Mariano Almonte ("Almonte") (collectively,
"Defendants"), alleging that Defendants caused him damages when they falsely reported to the
police that Fields had stolen a cell phone case. This matter comes before the Court for a Report
and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendants' Rule 12(b)(6)
Motion to Dismiss Counts II and III of the Amended Complaint. (ECF No. 9.) For the reasons
set forth below, the Court recommends that Defendants' Motion to Dismiss be GRANTED in
part and DENIED in part. The Court hereby recommends that Defendants' Motion be granted
with respect to Count II and denied with respect to Count III.

## I.      FACTUAL BACKGROUND

When resolving a motion for judgment on the pleadings, the Court construes the
allegations in favor of the non-moving party. Fed. R. Civ. P. 12(c); *Volvo Constr. Equip. N. Am.,
Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004). Accordingly, for the purpose of
resolving Defendants' Motion, the Court finds the relevant facts as follows.

On December 23, 2014, at approximately 10:15 a.m., Fields visited a Sprint Store in Chesterfield, Virginia. (First Amended Compl. ("Am. Compl.") (ECF No. 5) ¶ 9.) Sprint staffed and operated the store. (Am. Compl. ¶ 10.) Fields visited the store to buy a phone and pay his cell phone bill. (Am. Compl. ¶ 10.) Almonte assisted Fields in his purchase of an iPhone 5C and encouraged him to buy an iPhone case. (Am. Compl. ¶¶ 11-13.) Fields declined to buy a case and browsed the store while Almonte processed his purchase and bill payoff. (Am. Compl. ¶¶ 14-16.)

While Fields browsed, a box cutter that he used for work fell out of his pocket. (Am. Compl. ¶ 18.) Almonte then told him, "I seen that box cutter." (Am. Compl. ¶ 19.) Fields explained that he used the box cutter for work and volunteered to let Almonte search him for any stolen items. (Am. Compl. ¶ 20.) Almonte declined to search him and Fields left the store. (Am. Compl. ¶¶ 21-22.) His departure did not set off any store alarms, but Almonte still contacted law enforcement, claiming that Fields had stolen a case. (Am. Compl. ¶¶ 23-24.)

Almonte purportedly based his accusation on an inventory check of phone cases coming up short. (Am. Compl. ¶ 27.) However, no one found any evidence indicating that someone had used a box cutter to steal a phone case. (Am. Compl. ¶ 30.) Furthermore, no video existed of Fields stealing a phone case. (Am. Compl. ¶ 29.) Almonte still reported the theft, because under Sprint's policy, the company could terminate employees if an inventory shortage could not be explained by third party mishandling or theft. (Am. Compl. ¶ 27.)

At approximately noon that day, Almonte contacted the Chesterfield County Police Department and accused Fields of stealing a phone case. (Am. Compl. ¶¶ 24, 33.) Officer K.P. Gruarin ("Officer Gruarin") arrived and interviewed Almonte. (Am. Compl. ¶ 34.) Almonte told Officer Gruarin that "[he] witnessed Mr. Fields use the box cutter to steal an iPhone case."

(Am. Compl. ¶ 35.) Officer Gruarin then obtained an arrest warrant and arrived at the Food Lion store where Fields worked. (Am. Compl. ¶¶ 36, 38.) Officer Gruarin handcuffed and arrested Fields for Petit Larceny and Felony Possession of a Burglarious Tool. (Am. Compl. ¶¶ 39-40.) Officer Gruarin told Fields that he had arrested him, because Almonte had accused him of stealing the case with the box cutter. (Am. Compl. ¶ 41.)

After five hours in custody, the police released Fields. (Am. Compl. ¶ 43.) His trial scheduled for January 8, 2015 did not occur, because Almonte and other witnesses from Sprint failed to appear, despite subpoenas compelling them to do so. (Am. Compl. ¶ 44.) The court rescheduled the trial for May 11, 2015, but Almonte and the other witnesses again failed to appear.[1] (Am. Compl. ¶ 45.) Eventually, on July 6, 2015, the Commonwealth's Attorney indicated that she would *nolle prosequi* the charges. (Am. Compl. ¶ 48.)

Immediately following the arrest, Food Lion suspended Fields without pay. (Am. Compl. ¶ 43.) This suspension compromised a worker's compensation claim that Fields had pending against Food Lion. (Am. Compl. ¶ 51.) Taco Bell, where he had previously worked, refused to re-hire him due to the arrest. (Am. Compl. ¶ 53.) Fields defaulted on his mortgage and lost health insurance for himself and his children. (Am. Compl. ¶¶ 54-55.) Additionally, he began to suffer from depression and anxiety. (Am. Compl. ¶ 56.)

On October 7, 2016, Fields filed suit in the Richmond City Circuit Court, and Defendants removed the case to this Court on November 9, 2016. (ECF No. 1.) Fields subsequently filed an Amended Complaint alleging: (I) malicious prosecution, (II) intentional infliction of emotional distress ("IIED"), and (III) slander & slander *per se*. (Am. Compl. at 8-10.) Defendants have

---

[1]     Fields alleges that Almonte twice failed to comply with a subpoena to appear at trial, because he knew the accusations were patently false. (Am. Compl. ¶ 45.) Although Almonte could have appeared and informed the authorities that Fields did not steal the case, he chose to prolong the proceedings instead. (Am. Compl. ¶ 45.)

moved to dismiss Counts II and III pursuant to Rule 12(b)(6) for failure to state a claim upon

which relief can be granted.  Defendants argue that Fields has not sufficiently alleged

"outrageous or intolerable" conduct that would give rise to liability for intentional infliction of

emotional distress. (Sprint Corporation's and Mariano Almonte's Mem. in Supp. of Mot. to

Dismiss Counts II and III of the Am. Compl. ("Defs.' Mem.") (ECF No. 10) at 6.)  Additionally,

Defendants argue that Count III fails, because an absolute privilege cloaks the communications

that Defendants made with law enforcement when reporting the theft, rendering the statements

not actionable. (Defs.' Mem. at 8.)  Fields has responded to the motion. (Pl.'s Mem. in Opp. To

Defs.' Motion to Dismiss Counts II and III of the Am. Compl. ("Pl.'s Mem.") (ECF No. 11).)

Defendants replied, rendering the matter now ripe for review.  (Sprint Corporation's and

Mariano Almonte's Reply in Supp. of Motion to Dismiss ("Defs.' Reply") (ECF No. 12).)

## II.    STANDARD OF REVIEW

"A motion to dismiss under 12(b)(6) tests the sufficiency of a complaint; importantly, it

does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation

omitted).  The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of

the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not

assert "detailed factual allegations," but must contain "more than labels and conclusions" or

"formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).  In

considering such a motion, the Court takes a plaintiff's well-pleaded allegations as true and

views the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences

in the plaintiff's favor. *Kensington Volunteer Fire Dept., Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (additional citation omitted); *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (additional citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Against this standard, the Court will endeavor to determine if Fields has stated facts upon which relief may be granted in the two counts under attack.

## III.   ANALYSIS

### A. Fields has not alleged sufficient facts to support a claim for intentional infliction of emotional distress.

Fields alleges that Sprint and Almonte intentionally inflicted emotional distress upon him. (Am. Compl. ¶¶ 68-73.) Virginia looks unfavorably on the tort of IIED, because of the "inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury." *Fuller v. Aliff*, 990 F. Supp. 2d 576, 580 (E.D. Va. 2013) (quoting *Supervalu, Inc. v. Johnson*, 276 Va. 356, 370 (2008)). Thus, a plaintiff must prove, by clear and convincing evidence, that:

> "(1) the wrongdoer's conduct was intentional or reckless;
> (2) the conduct was outrageous or intolerable;
> (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and
> (4) the resulting emotional distress was severe."

*Supervalu*, 276 Va. at 370. Defendants focus their attack on the second prong. (Defs.' Mem. at 6.)

Virginia sets a high bar for a plaintiff to clear when alleging outrageous or intolerable conduct. Courts will impose liability "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as so atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 241

Va. 23, 26 (1991). Indeed, "neither tortious intent, criminal intent, malicious intent, nor conduct worthy punitive damages" will suffice to fulfill the outrageousness element of an IIED claim. *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 759-60 (E.D. Va. 2016) (citing *Russo*, 241 Va. at 27). The court decides as a question of law whether the "defendant's conduct is so extreme and outrageous as to permit recovery." *Hatfill v. New York Times Co.*, 416 F.3d 320, 336 (4th Cir. 2005) (citing *Womack v. Eldridge*, 215 Va. 338, 342 (1974)).

Absent exacerbating factors, isolated incidents will not constitute outrageous behavior. *See Daniczek*, 156 F. Supp. 3d at 760 ("Individually, acts undermining a plaintiff's employment or abusing a plaintiff are not outrageous" to prove an IIED claim.). However, the method or the duration and cumulative nature of misconduct can make non-outrageous actions become outrageous. *Id.*

Here, Fields asks the Court to find that Almonte's statement to Officer Gruarin that he witnessed Fields use the box cutter to steal the case constitutes outrageous behavior. (Pl.'s Mem. at 4.) Then, Almonte (along with other unnamed witnesses from Sprint) twice failed to appear at trial, in violation of subpoenas, to correct this knowingly false statement. (Am. Compl. ¶¶ 44-45, 70.) Without more, this conduct does not reach the level of "atrocious and utterly intolerable" needed to satisfy the second element of an IIED claim.

Fields misplaces his heavy reliance on *Almy v. Grisham*, 273 Va. 68 (2007). (Pl.'s Mem. at 3-4.) There, the defendants "devised a scheme to falsely accuse Almy of writing the letters." *Id.* at 78. This scheme included improperly obtaining a confidential medical release form of Almy's daughter from her school. *Id.* at 73. The defendants then sent that form, marked "strictly confidential," to a handwriting expert to use as a sample. *Id.* at 73-74. Finally, they falsely told the Commonwealth's Attorney and law enforcement that the handwriting expert had

concluded that Almy had written the letters. *Id.* at 74. In fact, he had not so concluded. *Id.* Based on the entirety of the scheme to "intentionally manufacture[] evidence to cause her distress," the court found that reasonable persons could view the conduct as outrageous. *Id.* at 78.

Here, the conduct alleged does not reach the same extremity as the scheme in *Almy*. Fields does not allege any type of devious scheme. Nor does he allege any type of misappropriation of confidential documents like in *Almy*. Instead, he alleges that Defendants made a false accusation to a police officer, and then failed to correct it in court. The Court finds that the facts as alleged by Fields do not rise to the same level of egregiousness that the court found outrageous in *Almy*. Indeed, Defendants' alleged conduct more closely tracks the level of outrageousness that courts have found not to constitute outrageous conduct.

In *Warner v. Buck Creek Nursery, Inc.*, the defendants allegedly lied about the plaintiff stealing from them. 149 F. Supp. 2d 246, 252-53 (W.D. Va. 2001). The defendants fabricated the accusations in retaliation for the plaintiff exercising his rights under the workers' compensation laws and ERISA-governed disability. *Id.* They also disseminated that lie with the intent of destroying his reputation in the community. *Id.* at 252. The court found these facts "completely insufficient to demonstrate the level of outrageousness required under Virginia law." *Id.* at 265.

In *Crittenson v. Arai Americas, Inc.*, the Court found that the defendants' conduct did not meet the standard for outrageousness despite their filing of false reports claiming that the plaintiff had stolen from the company. 2014 WL 31490, at *6-7 (E.D. Va. Jan. 3, 2014). Several of the defendants also started rumors that the plaintiff planned a drive-by shooting of the facility. *Id.* The Court noted that the outrageousness "prong is seldom met by plaintiffs under Virginia

law . . ." and found that "rumors and false reports accusing Plaintiff of these financial improprieties are not so extreme and outrageous as to permit recovery." *Id.* at 6-7.

The above cases show that false accusations of theft do not automatically constitute outrageous behavior. Two additional cases addressing outrageous behavior, albeit in different factual contexts, further undermine a finding of outrageous conduct here. In *Karpel v. Inova Health System Services, Inc.*, the Court found that firing an employee out of racial animosity or in retaliation for a race discrimination charge would not rise to the requisite level of outrageousness. 1997 WL 38137, at *7 (E.D. Va. Jan. 27, 1997). And, in *Harris v. Kreutzer*, the plaintiff sued the licensed psychologist who conducted a court-ordered examination of her after she sustained a traumatic brain injury in a car accident. 271 Va. 188, 193 (2006). During the exam, the doctor verbally abused her, yelled at her, and accused her of faking it and putting on a show, causing her to break down in tears. *Id.* The court found that the conduct "was not beyond all bounds of decency or utterly intolerable in a civilized community." *Id.* at 204 (citations omitted).

Virginia requires a level of outrageousness that goes above and beyond falsely accusing someone of theft, as demonstrated above. Although the alleged behavior — if proven — warrants condemnation, it does not rise to the lofty standard demanded for liability in an IIED claim. At its core, Fields alleges a single lie and a failure to affirmatively correct that lie. Although reprehensible, this conduct does not "go beyond all possible bounds of decency" such that reasonable persons would view it as "utterly intolerable in a civilized community." *Almy*, 273 Va. at 79.

Defendants also appear to take issue with Plaintiff's pleading of the fourth prong. (Defs.' Mem. at 7-8.) Although Virginia law sets a high bar for the severity of emotional distress that a

plaintiff must show, this Court has not required plaintiffs to clear that bar at the pleading stage in federal court. *Compare Harris*, 271 Va. at 204-05 (discussing Virginia's standard of applying liability only "where the distress inflicted is so severe that no reasonable person could be expected to endure it"), *with Daniczek*, 156 F. Supp. 3d at 758-59 (applying a relaxed standard to the analysis of the emotional distress, because the "Fourth Circuit has explicitly stated that Fed. R. Civ. P. 8 trumps Virginia's heightened pleading standards. . . .") Plaintiff has pled financial harm, embarrassment, depression, anxiety, mental anguish, emotional pain, torment and suffering, shame, fright, mortification, humiliation and loss of dignity and pride. (Am. Compl. ¶¶ 52-56, 87.) Thus, Fields has pled severe emotional distress with sufficient particularity to meet this Court's pleading requirements.

Nevertheless, due to the deficiencies in Plaintiff's Amended Complaint with respect to Defendants' alleged conduct, his IIED claim fails.

**B. Fields has pled sufficient facts to support a claim for slander *per se* in Count III.**

Defendants move to dismiss Fields' slander and slander *per se* count, stating that an absolute privilege renders the statements not actionable. (Defs.' Mem. at 9.) Plaintiff responds that only a qualified privilege can protect the statements at issue, and he has defeated that privilege with an allegation of malice. (Pl.'s Mem. at 7.) Thus, the Court must first endeavor to determine whether an absolute privilege applies to Almonte's statements to the police.

**1. Absolute privilege does not cover Almonte's statements.**

Absolute privilege shields the maker of a statement from liability even if he makes the statement maliciously and with knowledge of its falsity. *Lindeman v. Lesnick*, 268 Va. 532, 537 (2004). Few statements deserve the protection of absolute privilege. "Cases in which absolute privilege applies are not numerous and they may be divided into three classes, namely:

9

proceedings of legislative bodies; judicial proceedings; and communications by military and naval officers." *Isle of Wight Cty. v. Nogiec*, 281 Va. 140, 152 (2011) (internal citations omitted).

Defendants here seek the absolute privilege afforded statements made in judicial proceedings. (Defs.' Mem. at 9.) Virginia has long recognized that "words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged." *Darnell v. Davis*, 190 Va. 701, 707 (1950). That begs the question of whether a judicial proceeding, for purposes of absolute privilege, includes statements to a police officer that initiate an investigation.

Absolute privilege extends well beyond the actual courtroom. *Lindeman*, 268 Va. at 537. It includes "every proceeding before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action of such court or officer." *Darnell*, 190 Va. at 707. However, Virginia has explicitly declined to extend absolute privilege to "mere potential litigation." *Lindeman*, 268 Va. at 538.

Thus, there exists some point in the lead-up to litigation that triggers absolute privilege. Here, the Court need not demarcate that exact line, because this case deals with the earliest possible point in the potential litigation timeline: the initiation of an investigation. If the front end of a judicial proceeding knows some bound, and *Lindeman* instructs that it does, then Almonte's statements necessarily precede that boundary line.

The purpose behind the absolute judicial privilege supports not extending it to statements initiating an investigation. The privilege encourages unrestricted speech in litigation. *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 537 (1988). Virginia courts "believe the public interest is best served when individuals who participate in law suits are allowed to

conduct the proceeding with freedom to speak fully on the issues relating to the controversy." *Watt v. McKelvie*, 219 Va. 645, 651 (1978). However, the Court does not believe that a policy encouraging individuals to speak freely *about* a controversy gives them an unfettered right to *create* the controversy.

Additionally, comments to an officer lack the protections inherent in a judicial proceeding that courts rely upon when affording absolute privilege. "Absolute privilege is extended to statements made in the course of judicial proceedings because of the safeguards that exist in such proceedings, including liability for perjury and the applicability of the rules of evidence." *Lindeman*, 268 Va. at 537 (citing *Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc.*, 259 Va. 92, 101 (2000)); *see also Elder v. Holland*, 208 Va. 15, 22 (1967) (declining to extend absolute privilege to a hearing, because the rules of evidence and threat of perjury did not apply). The rules of evidence do not govern a conversation with the police, nor can the conversation lead to a perjury conviction. Therefore, the Court finds both the purpose and the safeguards of absolute privilege in judicial proceedings absent in comments to a police officer.

Defendants primarily rely on two cases, *Shabazz v. PYA Monarch, LLC* and *Holmes v. Eddy*, for the proposition that the absolute privilege extends to all communications with law enforcement. (Defs.' Mem. at 9.) But, those cases do not stand for such an extension. Both cases analyze statements made in response to law enforcement requests during an already pending investigation.

In *Holmes v. Eddy*, the defendant provided evidence to the Securities and Exchange Commission (SEC) during the course of its investigation of the plaintiff. 341 F.2d 477, 478 (4th Cir. 1965). Specifically, the defendant forwarded a letter from the plaintiff that contained the defendant's own derogatory comments. *Id.* Then, the SEC requested that he execute an affidavit

regarding the misleading letter. *Id.* The defendant complied with the SEC's request. *Id.* Importantly, the letter and the affidavit remained confidential until the SEC commenced an action against the plaintiff. *Id.* The plaintiff then sued the defendant for a conspiracy to circulate harmful falsehoods. *Id.* at 480. The court found that the defendant's acts were privileged, because of the confidential nature of the statements. *Id.* Additionally, it noted that the "affidavit was furnished by request of the S.E.C." *Id.* Lastly, the court did not clarify whether absolute or qualified privilege cloaked the defendant.

Likewise, in *Shabazz v. PYA Monarch*, the Court found that the defendant could claim privilege for statements made about the plaintiff to the FBI. 271 F. Supp. 2d 797, 805 (E.D. Va. 2003). However, the Court relied heavily on the fact that the defendant "complied with a federal investigation" in making the allegedly defamatory statements. *Id.* "In so complying, the defendant's statements are protected by immunity." *Id.* at 806. Indeed, the defendant asserted the privilege on the basis that it was responding to an FBI investigation. *Id.* at 805. This compliance with an existing investigation distinguishes it from the current case.

Contrary to Defendants' suggestion, these cases do not extend absolute privilege to all communications with law enforcement. Rather, they support the proposition that absolute privilege covers comments made in response to a police investigation. Defendants ask the Court to extend the privilege to comments made that initiate a police investigation. The Court declines this request. Although Almonte does not enjoy an absolute privilege, he may still enjoy qualified privilege.

**2. Fields has pled malice sufficient to overcome qualified privilege.**

The Court must first determine whether to afford Defendants' statements to the police a qualified privilege. In Virginia, a "communication, made in good faith on a subject in which the

communicating party has an interest or owes a duty, is qualifiedly privileged if the communication is made to a party who has a corresponding interest or duty." *Smalls v. Wright*, 241 Va. 52, 54 (1991); *Shabazz*, 271 F. Supp. 2d at 806.  Here, Defendants had an interest and a duty in identifying potential shoplifters to the police, and the police had a corresponding duty to catch any shoplifters.  *See Marsh v. Commercial & Sav. Bank of Winchester*, 265 F. Supp. 614, 621 (W.D. Va. 1967) (granting qualified privilege, because bank tellers and police had corresponding duties to apprehend robbers); *Smith v. Button*, 43 Va. Cir. 379, 382 (City of Richmond 1997) (applying qualified privilege, because both victim and police had corresponding duties).  Therefore, Almonte's statements to the police will enjoy a qualified privilege.  Unlike the invincibility provided by absolute privilege, a statement cloaked in qualified privilege carries an Achilles heel.

A plaintiff may defeat qualified privilege by showing that the defendant spoke the defamatory words with common-law malice.  *Shabazz*, 271 F. Supp. 2d at 807 (quoting *Southeastern Tidewater Opportunity Project, Inc. v. Bade*, 246 Va. 273, 276-77 (1993)).  Malice exists when "the communication was actuated by some sinister or corrupt motive." *Southeastern Tidewater*, 246 Va. at 276; *see also Daniczek*, 156 F. Supp. 3d at 756 ("In Virginia, malice means any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished" in the malicious prosecution context).  A plaintiff can also show recklessness. *Southeastern Tidewater*, 246 Va. at 276.  Additionally, a lack of probable cause can support an inference of malice. *See Giant of Va., Inc. v. Pigg*, 207 Va. 679, 684 (1967) (analyzing malice in a malicious prosecution action).

Here, Fields has sufficiently pled that Almonte had an ulterior motive in accusing him of theft. Fields alleges that Sprint threatens its employees with termination if inventory goes missing, thereby incentivizing accusations of theft. (Am. Compl. ¶ 25.) According to Fields, Almonte risked termination if he failed to attribute the inventory shortage to theft. (Am. Compl. ¶ 27.) These facts, if true, can support an inference that Almonte acted on a motive other than catching a shoplifter — he reported Fields to save his own job, not to catch a thief.

Additionally, Fields claims that the lack of probable cause for the theft accusation supports an inference of malice. (Am. Compl. ¶ 65.) He alleges that Defendants found no evidence of a theft by box cutter. (Am. Compl. ¶ 30.) Nor did they have any surveillance footage of Fields stealing the case. (Am. Compl. ¶ 29.) These facts demonstrate both a lack of probable cause and recklessness with respect to the truth. Moving forward, Fields will need to prove these allegations of malice by clear and convincing evidence. *Southeastern Tidewater*, 246 Va. at 276. This may pose a problem for him, but given the deference his pleadings enjoy at this stage, he has pled sufficient facts to support an inference of malice.

The Court finds that a qualified privilege, not an absolute privilege, covers Defendants' communications to the police. However, Fields has sufficiently pled malice to defeat the privilege at this stage. Therefore, the Court recommends that Defendants' motion with respect to the slander or slander *per se* count be denied.

## IV.    CONCLUSION

For the reasons stated above, the Court recommends that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part. The Court recommends that Defendants' Motion to Dismiss (ECF No. 9) be GRANTED with respect to Count II and DENIED with respect to Count III.

Let the clerk forward a copy of this Report an d Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: May 11, 2017